United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES ARTHUR MATTSON,                       No C 08-4331 VRW

        Plaintiff,                  ORDER

    v

FEDERAL BUREAU OF INVESTIGATION,

        Defendant.
_____/

        Plaintiff James Arthur Mattson ("Mattson") seeks an award of attorney fees under FRCP 54(d) and Civil LR 54-6 pursuant to the attorney fees provision of the Freedom of Information Act ("FOIA"), 5 USC § 552(a)(4)(E). Doc #26 at 5. Mattson claims that he is entitled to a fee award because his filing of a FOIA complaint, see Doc #4, caused defendant Federal Bureau of Investigation ("FBI") to change its position voluntarily. Doc #26 at 5; 5 USC § 552(a)(4)(E)(ii)(II). The FBI has filed an opposition. Doc #32. Mattson has filed a reply. Doc #33. For the following reasons, Mattson's motion is DENIED.

//
//

I

The following is a summary of the facts relating to Mattson's FOIA requests and administrative appeals and the FBI's responses between December 14, 2001 and December 4, 2008.

On December 14, 2001, Mattson filed his initial FOIA request with FBI headquarters. Doc #12-3 Exh A. The FBI responded to Mattson's request by letter dated January 25, 2002. Doc #12-3 Exh C. The FBI attached to its letter twenty-six redacted pages of responsive records with corresponding exemptions and withheld one page in full. Id.

On March 30, 2002, Mattson filed an administrative appeal with the Department of Justice's Office of Information and Privacy ("DOJ/OIP"), challenging several of the FBI's listed exemptions and seeking additional unreleased records. Doc #12-3 Exh D.

On May 7, 2002, the DOJ/OIP acknowledged receipt of Mattson's appeal and advised Mattson that it had a substantial backlog of pending appeals prior to his own and would address his appeal in the order in which it was received. Doc #12-3 Exh E. Next, by undated letter, the DOJ/OIP advised Mattson that it was affirming the FBI's action in part and remanding Mattson's request to the FBI for a further search of cross-references. Doc #12-3 Exh F; see also Doc #12-1 at 3 ¶12 (Hardy Decl). The letter advised Mattson that if the FBI located additional records pursuant to this remand it would "send the releasable portions of those records to [Mattson] directly." Doc #12-3 Exh F. The DOJ/OIP also informed Mattson that the FBI had not searched its field offices for records responsive to his FOIA request and advised Mattson to send his requests directly to the FBI's field offices. Id.

Mattson did not send a FOIA request directly to the FBI's field offices until 2007. In letters dated March 21, 2007 and March 29, 2007, Mattson's counsel filed identical FOIA requests with the FBI's Minneapolis, San Francisco, San Diego and Chicago field offices. Doc #12-3 Exhs G & H (Minneapolis); Doc #12-4 Exhs L (San Francisco), N & O (San Diego), J (Chicago). By letters addressed to Mattson's counsel dated April 2, 2007 and April 9, 2007, the FBI acknowledged receipt of each of Mattson's requests. Doc #12-3 Exh I (Minneapolis); Doc #12-4 Exhs M (San Francisco), K (Chicago), P (San Diego) (stating file responsive to Mattson's March 21 and March 29, 2007 requests was destroyed January 17, 2007 pursuant to FBI retention schedule).

By letters dated July 2, 2007 and October 7, 2007, the FBI advised Mattson of the status of his pending FOIA requests, informing him that his requests were in the "'perfected backlog'" awaiting assignment to an analyst. Doc #12-4 Exhs R, S.

Between October 2007 and September 2008, Mattson received responses from each field office and a total of fourteen unique redacted pages of responsive documents, all generated from the San Francisco office.[1] See Doc #14 at 11, 13-14.

//

---

[1] The Minneapolis Field Office returned fourteen redacted pages and withheld two illegible pages. Doc #14 at 11. The Chicago office returned the same fourteen pages attached to a letter informing Mattson that records located at the Chicago Field Office that might have been responsive to his request were destroyed in 1978 pursuant to the FBI's retention schedule. Id at 13. The San Francisco office returned the same redacted fourteen pages. Id. The San Diego office responded that the main file responsive to Mattson's request was destroyed on January 17, 2007 pursuant to the FBI's retention schedule. Id at 14; Doc #12-4 Exh P.

On September 17, 2008, Mattson filed the operative complaint in this action, Doc #4, seeking three categories of relief summarized by the court in its order on the parties' cross-motions for summary judgment. See Doc #19 at 3.[2] Mattson further asserted that the FBI unnecessarily delayed its response to his FOIA requests. Id. The court stated that "[w]hile any delay may have been frustrating for Mattson," he failed to state a claim related to the delay. Id at 3-4. The court found that the FBI had conducted a reasonable search and had provided Mattson with reasonable responses to his FOIA requests. Doc #19 at 5.

On December 4, 2008, the FBI released thirty-seven additional redacted pages from its headquarters to Mattson. Doc #12-6 Exh EE.

## II

A plaintiff may obtain attorney fees under FOIA by establishing he is both eligible and entitled to the award. Long v IRS, 932 F2d 1309, 1313 (9th Cir 1991). For the reasons discussed below, the court finds Mattson is not eligible for an award of attorney fees and therefore the court does not address the issue of entitlement.

//

---

[2] These three categories were: (1) whether the FBI reasonably conducted searches in response to the Chicago and San Diego requests (to which the FBI informed him files had been destroyed pursuant to the agency's retention schedule); (2) whether the FBI properly redacted documents pursuant to the corresponding FOIA exemptions; and (3) whether the FBI properly withheld two illegible documents. Doc #19 at 3. The court denied Mattson's motion for summary judgment and granted the FBI's except with regard to the FBI's withholding of two illegible pages, which it ordered the agency to produce to the court for an ex parte in camera review. Id at 10.

FOIA provides in relevant part that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 USC § 552(a)(4)(E)(i).  A complainant can substantially prevail by receiving relief through a judicial order, 5 USC § 552(a)(4)(E)(ii)(I), or through a voluntary or unilateral change in position by the agency, 5 USC § 552(a)(4)(E)(ii)(II).  Courts have deemed this second theory the "catalyst theory."

The Supreme Court had rejected the catalyst theory in Buckhannon Bd & Care Home, Inc v W Va Dept of Health & Human Resources, 532 US 598 (2001) ("Buckhannon"), holding that plaintiffs have substantially prevailed and are eligible to recover attorney fees in cases brought under the Fair Housing Amendments Act ("FHAA") and the Americans with Disabilities Act ("ADA") only if they have received a favorable judgment or court-ordered consent decree.  Id at 604.  Circuit courts interpreted Buckhannon's holding to apply in cases brought under FOIA.  See Oil, Chem & Atomic Workers Int'l Union, AFL-CIO v Dept of Energy, 288 F3d 452, 456-57 (DC Cir 2002); Union of Needletrades, Indus & Textile Employees, AFL-CIO v INS, 336 F3d 200, 203 (2d Cir 2003); Oregon Natural Desert Ass'n v Locke, 572 F3d 610, 616-17 (9th Cir 2009) (agreeing with DC Circuit and Second Circuit that prior to the 2007 FOIA amendments, Buckhannon precluded FOIA plaintiffs from recovering fees under the catalyst theory).

Congress responded to Buckhannon by amending FOIA in 2007 to revive the catalyst theory in FOIA cases.  See Oregon Natural Desert Ass'n, 572 F3d at 615-16; 5 USC § 552(a)(4)(E)(ii)(II). Since 2007, plaintiffs can establish eligibility for attorney fees

5

1  even if they have not satisfied <u>Buckhannon</u> by obtaining a judicial
2  order in their favor.  <u>Oregon Natural Desert Ass'n</u>, 572 F3d at 615.
3       The Ninth Circuit has not selected a case for publication
4  since the 2007 FOIA amendments went into effect that discusses the
5  recovery of attorney fees under the catalyst theory.  The court
6  therefore relies on two Ninth Circuit cases decided prior to
7  <u>Buckhannon</u> that discuss the recovery of attorney fees by a FOIA
8  plaintiff under the catalyst theory:  <u>Church of Scientology of Cal v</u>
9  <u>US Postal Service</u> 700 F2d 486, 490 (9th Cir 1983) ("<u>Church of</u>
10 <u>Scientology</u>") and <u>Exner v FBI</u>, 443 F Supp 1349, 1353 (SD Cal 1978),
11 aff'd, 612 F2d 1202, 1207 (9th Cir 1980).

13                                A
14      In <u>Church of Scientology</u>, the court held that a plaintiff
15 seeking to establish that he has substantially prevailed under the
16 catalyst theory must present convincing evidence that two threshold
17 conditions have been satisfied:  (1) the action was reasonably
18 necessary to obtain the information and (2) the action had a
19 substantial causative effect on the agency's release of the
20 documents in question.  700 F2d at 490.  An action may be considered
21 reasonably necessary where the plaintiff has "a compelling need to
22 bring th[e] lawsuit."  Id (citing <u>Exner</u>, 443 F Supp at 1353).
23      "Whether a party has shown, in a particular case, that the
24 suit was reasonably necessary and that a causal nexus exists between
25 the action and surrender of information — that is, whether the party
26 has substantially prevailed — is a factual determination for the
27 district court to resolve."  <u>Church of Scientology</u>, 700 F2d at 489
28 (citing <u>Cox v US Dept of Justice</u>, 601 F2d 1, 6 (DC Cir 1979),

rejected on other grounds by <u>Crooker v Bureau of Alcohol, Tobacco & Firearms</u>, 670 F2d 1051 (DC Cir 1981)).

B

In <u>Exner v FBI</u>, the court held that a plaintiff who filed a FOIA action to compel immediate disclosure of records from the FBI had presented convincing evidence of both of the above threshold conditions and therefore had substantially prevailed under the catalyst theory. 443 F Supp at 1353.

With regard to the first threshold condition, whether the action was reasonably necessary, the court held that the plaintiff had a compelling need to bring the action because "[sh]e was not simply an ordinary citizen who was curious as to what information the government might have compiled on her." 443 F Supp at 1353. The plaintiff had learned that information from FBI files regarding her alleged relationships with organized crime figures had been leaked to the press. Id. The plaintiff believed the information was inaccurate and its leakage exposed her to grave personal danger because two of these organized crime figures had been murdered. Id. Because of these serious concerns, the court found that "it was incumbent that plaintiff have an opportunity not only to review and correct the information in the FBI's files, but to do so as soon as possible." Id. The FBI was unwilling to deviate from its policies to give the plaintiff's FOIA request preferential treatment and therefore her only option was to bring suit against the agency. Id.

With regard to the second threshold criteria, whether the plaintiff's action had a substantial causative effect on the agency's release of the requested documents, the court had "no doubt

7

that [the plaintiff's] action was directly responsible for delivery of the documents plaintiff received." 443 F Supp at 1353.

The **Exner** court considered an additional factor that weighed in favor of concluding the plaintiff had substantially prevailed under the catalyst theory. 443 F Supp at 1353. The plaintiff had convinced the court to establish a new legal principle that in exceptional cases like her own, the FBI must process requests for information on a priority basis. Id. Because the plaintiff had "acted as a private attorney general in vindicating an important public policy," the court concluded that her case presented "precisely the type of situation Congress indicated would be proper for an award of attorney fees." Id.

### III

Mattson argues that he has substantially prevailed in the above-captioned matter under 5 USC § 552(a)(4)(E)(i)(II) because the filing of his complaint caused the FBI to voluntarily or unilaterally change its position and release documents it had withheld previously. Doc #26 at 5. But Mattson fails to present convincing evidence of the two threshold conditions required for recovery under the catalyst theory and therefore his motion for attorney fees is DENIED.

### A

Mattson does not present convincing evidence that the filing of this action was reasonably necessary to recover the documents he requested from the FBI. Unlike the plaintiff in **Exner**, Mattson does not contend that the FBI's delayed response placed him

8

in grave personal danger or that he was in immediate need of documents in the FBI's files. See Doc ##26, 33. Mattson states that the purpose of his FOIA request is to document the FBI's actions against the Black Panther Party in the 1970s and to "add[] to the body of historic documents concerning the agency's abusive and unlawful actions." Doc #26 at 33. The FBI had responded to Mattson's FOIA requests by releasing forty pages of documents: twenty-six pages from the FBI's headquarters in January 2002, Doc #12-3 Exh C, and fourteen pages from the FBI's field offices in 2007, Doc #14 at 11, 13-14. Based on the FBI's responses to his broad FOIA requests, Mattson fails to establish that filing this action was reasonably necessary to recover the additional information he sought.

B

Mattson also fails to present convincing evidence that the filing of this action had a substantial causative effect on the FBI's release of additional documents. Mattson contends that the mere fact that the FBI released thirty-seven additional responsive pages on December 4, 2008, after this action was filed on September 17, 2008 (Doc #4), establishes that he has substantially prevailed. Doc #33 at 4. The court finds that the timing of these two events, without more, is insufficient to establish causation.

Furthermore, an alternative explanation for FBI's December 4, 2008 response appears in the record. Mattson sent his initial FOIA request to FBI headquarters on December 14, 2001, Doc #12-3 Exh A, and received a response on January 25, 2002. Doc #12-3 Exh C. Dissatisfied with the twenty-six pages he received, Mattson appealed

9

1 to the DOJ/OIP challenging several of the FBI's listed exemptions
2 and seeking additional unreleased records.  Doc #12-3 Exh D.  The
3 DOJ/OIP advised Mattson that it was affirming the FBI's action in
4 part and remanding Mattson's request to the FBI for a further search
5 of cross-references.  Doc #12-3 Exh F; see also Doc #12-1 at 3 ¶12.
6 The DOJ/OIP informed Mattson that if the FBI located additional
7 records pursuant to this remand it would "send the releasable
8 portions of those records to [Mattson] directly."  Doc #12-3 Exh F.
9 The FBI's release of the additional thirty-seven pages from its
10 headquarters on December 4, 2008 could have been the final result of
11 this remand rather than a change in position in response to
12 Mattson's September 2008 lawsuit.

## IV

15     Unlike the plaintiff in <u>Exner</u>, Mattson fails to present
16 convincing evidence to establish that the filing of this action was
17 reasonably necessary to recover the requested documents and that
18 this action had a substantial causative effect on their release.
19 Instead, Mattson asks the court to infer from the timing of events
20 alone that he has met both threshold criteria.

21     The facts relating to Mattson's FOIA requests and the
22 FBI's responses in the time period between December 14, 2001 and
23 December 4, 2008 are described at Part I of this order, supra at
24 2-4.  This record paints a picture of an agency with a severe
25 backlog of FOIA requests attempting in good faith to respond, albeit
26 belatedly, to Mattson's multiple requests in the order in which they
27 were received.  See, e g, Doc #12-4 Exhs R, S (informing Mattson
28 that his requests were in "'perfected backlog'" awaiting assignment

10

to an analyst); Doc #12-3 Exh E (informing Mattson that agency had a "substantial backlog of pending appeals"). Furthermore, the court determined previously, in granting summary judgment for the FBI, that the FBI had conducted reasonable searches and had provided reasonable responses to Mattson's FOIA requests. Doc #19 at 5. Mattson's attempt to relitigate this issue in his reply, see Doc #33 at 6-7, is not persuasive.

While the fact that the FBI released additional responsive documents voluntarily and not by court order does not preclude Mattson's recovery of attorney fees, "the mere fact that the information sought was not released until after the lawsuit was instituted is insufficient to establish that a complainant has 'substantially prevailed.'" Church of Scientology, 700 F2d at 492 (citing Cox, 601 F2d at 6).

For the foregoing reasons, Mattson's motion for attorney fees and costs is DENIED.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge